**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANIYAH MCGEE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MARIO BADESCU SKIN CARE, INC.,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Aniyah McGee ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Mario Badescu Skin Care, Inc. ("Defendant"), seeking monetary damages and other remedies.

## NATURE OF ACTION

1. This is a putative class action lawsuit on behalf of purchasers of Mario Badescu Skincare Facial Spray with Aloe, Herbs and Rosewater[1] (the "Product").

2. Defendant manufactures, markets, and sells the Product in thousands of stores throughout the United States, including the State of New York and State of California.

3. Defendant specializes in developing, marketing, and selling skincare solutions to consumers. One of its flagship products is its Skincare Facial Spray with Aloe, Herbs and Rosewater. According to Defendant, "[i]n the 1980s the [Product] was formally introduced to [its product] line" and "was always a well-loved product" that has "become a household name."

4. Defendant prominently advertises, markets, and sells the Product as a cosmetic containing "Rosewater" (the "Rosewater Representation"), representing to consumers that the

[1] The Product includes all sizes of Mario Badescu Skincare Facial Spray with Aloe, Herbs and Rosewater.

Product is made with rosewater as an ingredient.




5. Defendant intentionally misleads consumers into believing that the Product is made with rosewater. It does this because consumers believe rosewater is beneficial for the skin due to its anti-inflammatory properties, which can soothe skin irritation and reduce discoloration.

6. However, unbeknownst to consumers, the Product does not contain rosewater. Rather, it contains *Rosa canina* bud extract (also known as rosehip extract).

7. As such, Defendant has engaged in widespread false and deceptive conduct by designing, marketing, manufacturing, distributing, and selling the Product with the Rosewater Representation. Every package of the Product misleads consumers into believing the Product is made with rosewater.

8. Plaintiff and Class members purchased the Product, which is designed, marketed, manufactured, distributed, and sold by Defendant. Furthermore, Plaintiff and Class members relied to their detriment on Defendant's Rosewater Representation, when the Product does not contain

rosewater. Plaintiff and Class members would not have purchased the Product – or would not have paid as much as they did to purchase them – had they known the Rosewater Representation was false. Plaintiff and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representation.

9. Plaintiff brings this action individually, and on behalf of similarly situated individuals who purchased the falsely and deceptively labeled Product during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, Breach of Express Warranty under California Law, California Commercial Code § 2313, and fraud.

**PARTIES**

10. Plaintiff Aniyah McGee is a citizen and resident of Riverside, California. In or around early 2025, Plaintiff purchased the Product at Macy's in Riverside, California. Based on the Rosewater Representation, Plaintiff believed she was purchasing a product containing rosewater. Plaintiff relied on Defendant's Rosewater Representation in deciding to purchase her Product. Accordingly, the Rosewater Representation was part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known the Rosewater Representation was not true. In making her purchase, Plaintiff paid a price premium for a product that was made with rosewater.

11. Plaintiff remains interested in purchasing skincare that truly contains rosewater and would consider purchasing the Product in the future if Defendant ensured the Rosewater Representation was accurate and truthful. However, she cannot know for certain whether the false labeling of the Product has been corrected. The composition of the Product may change over time,

but Plaintiff will be unable to rely on the Products' Rosewater Representation in the future as she will not be able to determine whether the Product truly contains rosewater.

12. Defendant Mario Badescu Skin Care, Inc. is a New York corporation with its principal place of business at 320 East 52nd Street, New York, New York. Defendant formulates, manufactures, labels, markets, distributes, and sells the Product nationwide. Defendant has maintained substantial distribution and sales in this District.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000, and at least one member of the proposed Class, including Plaintiff, is a citizen of a state different from Defendant.

14. This Court has specific jurisdiction over Defendant because it conducts substantial business within New York, including the sale, marketing, and advertising of the Product.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## FACTUAL ALLEGATIONS

### I. Defendant Misrepresents That the Product Contains Rosewater

16. Defendant falsely and misleadingly labels the Product as containing rosewater:



17. Similarly, Defendant's marketing and advertising emphasize that the product contains rosewater by featuring images of rose petals:




18. Rosewater is made by distilling rose petals with steam, separating the essential oils in the petals from the water. Rosewater is ideal for daily skincare use because it is gentle on the skin, having a milder fragrance than rose oils. Rosewater is typically derived from the *Rosa damascena* or *Rosa centifolia* species of roses (also sometimes called by their English names, damask and cabbage roses, respectively), which are considered among the highest quality rose varieties:





***Rosa damascena*** ***Rosa centifolia***

19. Defendant claims that it uses "high-quality" roses to extract rosewater, such as *Rosa damascena* or *Rosa centifolia*.

HOW IS ROSEWATER EXTRACTED FOR SKINCARE?

The extraction of rosewater typically begins with the selection of high-quality roses. Different species of roses can be used, but the most used variety is the Damask rose (Rosa damascena) or the Rosa centifolia.

The petals of the roses are carefully harvested and the petals are placed in water. As the water heats up, steam is produced as the steam containing the essence of the roses rises through the still and enters a condensation chamber. In the condensation chamber, the steam cools down and turns back into a liquid. This liquid is a combination of water and rose oil, which is commonly known as rose hydrosol or rosewater.

20. However, the Product does not contain rosewater at all. Instead, the Product contains *Rosa canina* bud extract:

**Ingredients**

Water (Aqua/Eau), Aloe Barbadensis Leaf Juice, Propylene Glycol, Polysorbate 20, Fucus Vesiculosus Extract, Phenoxyethanol, Caprylyl Glycol, Gardenia Florida Fruit Extract, Fragrance (Parfum), Thymus Vulgaris (Thyme) Extract, Hexylene Glycol, Citric Acid, Potassium Sorbate, Sodium Benzoate, Rosa Canina Bud Extract, Geraniol, Citronellol, Red 40 (CI 16035), Yellow 5 (CI 19140).

21. *Rosa canina* bud extract is derived from the *Rosa canina* (dog rose) plant:



***Rosa canina***

22. *Rosa canina* bud extract is extracted from the fruit (hip) of the plant, also known as the rosehip:



***Rosa canina hip***

The extract is produced by treating dried, raw *Rosa canina* bud powder with a solvent, such as ethanol or 1,3-butylene glycol, and then filtering the resulting mixture.

23. Rosewater and *Rosa canina* bud extract are materially different ingredients with distinct compositions and uses. Rosewater is a light, water-based ingredient commonly used in toners and other skincare products for its anti-inflammatory and antibacterial benefits that soothe and cleanse the skin. In contrast, *Rosa canina* bud extract is oil-based, which functions as a more intensive treatment, akin to a skin moisturizer.

## II. The Presence of Rosewater in Skincare Products Is Material to Consumers

24. Defendant falsely labels its Product, with the Rosewater Representation prominently and intentionally displayed on the front of the Product's packaging, to mislead consumers into believing the Product contains rosewater.

25. Defendant engages in this conduct because rosewater is a popular and desirable ingredient in skincare products. Market research indicates that consumers, particularly those who are health-conscious, are drawn to skincare products, including toners, sprays, and cleansers,

formulated with rosewater. Accordingly, manufacturers and retailers have increasingly marketed and expanded their skincare lines to feature rosewater as a key ingredient.

26. Similarly, research has shown that rosewater is one of the top three most desired botanical ingredients in skincare.

27. Defendant knew or should have known that the Product did not contain rosewater because Defendant and/or its agents formulated and manufactured the Product.

**III. Defendant's Rosewater Representation Harms Consumers**

28. Plaintiff and Class members purchased the Product in reliance on the Rosewater Representation, reasonably believing the Product contained rosewater.

29. Plaintiff's and Class members' reasonable belief that the Product contained rosewater was a significant factor in their decisions to purchase the Product.

30. Plaintiff and Class members did not know, and had no reason to know, that the Product contained *Rosa canina* bud extract because the Product is deceptively labeled and advertised to create the impression that it contains rosewater. Nothing on the front of the Product's packaging discloses that the Product does not, in fact, contain rosewater.

31. Defendant knew that Plaintiff and Class members would rely on the Rosewater Representation and would therefore reasonably believe the Product contains rosewater.

32. Because the Product does not contain rosewater, as represented by Defendant and reasonably expected by Plaintiff and Class members, Defendant's uniform practice regarding the marketing and sale of the Product was and continues to be misleading and deceptive.

33. Each Class member has been exposed to the same or substantially similar deceptive practices, as the Product does not contain rosewater.

34. Consumers are willing to pay a price premium for skincare products containing rosewater and are induced to purchase such products based on that belief. Plaintiff and Class members would not have purchased the Product, or would have paid significantly less for it, had they known that it does not contain rosewater. Consequently, Plaintiff and Class members paid a price premium for the Product because of the Rosewater Representation. Therefore, Plaintiff and Class members suffered an injury in fact, including the loss of money, as a result of Defendant's false and misleading Rosewater Representation.

**IV. No Adequate Remedy at Law**

35. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

36. **Broader Statues of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. Thus, Class Members who purchased the Product more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Class Members who purchased the Product prior to the furthest reach-back under the statute of limitations for breach of warranty or fraud will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

37. **More Prompt, Certain, and Efficient.** Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Legal claims for damages are not equally certain as restitution because claims under the UCL and other equitable claims entail few elements.

38. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It

includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Product with the Rosewater Representation, including the Product's label and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Rosewater Representation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and the Class may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct; common law fraud claims require a showing of actual deception or reliance).

39. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and the Class because Defendant continues to misrepresent the Product with the Rosewater Representation. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm – none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of removing the Rosewater Representation is necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. An injunction requiring removal of the claim will prevent the ongoing deception and repeat purchases based thereon. It is also not available through a legal remedy (such as monetary damages). In addition, injunctive relief is necessary because, because

discovery and Plaintiff's investigation has not yet completed. Moreover, example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

40. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

41. **Procedural Posture – Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ALLEGATIONS

42. *Class Definition*: Plaintiff brings this action on behalf of all people who purchased at least one of the Product in the State of California within the applicable statute of limitations period (the "Class").

43. The Class definition is a placeholder that may be altered or amended before final judgment. Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing Class definition may be expanded or narrowed by amendment or in the motion for class certification, including through the use of subclasses.

44. Excluded from the putative Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Claims for personal injury are also excluded.

45. *Numerosity.* Class members are so numerous that their individual joinder is impracticable. The Class includes thousands of consumers. The precise number of Class members and their identities are unknown to the Plaintiff at this time but may be determined through discovery.

46. *Commonality and Predominance*. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

a. Whether the Rosewater Representation has a tendency to deceive;

b. Whether the Rosewater Representation is materially misleading;

c. Whether Plaintiff and Class members are entitled to damages;

d. Whether Plaintiff and Class members are entitled to statutory damages;

e. Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here; and

f. Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

47. *Typicality.* Plaintiff's claims are typical of the claims of Class members because Plaintiff and Class members sustained damages as a result of Defendant's uniform wrongful conduct.

48. *Adequacy*. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff will vigorously prosecute this action on behalf of Class members.

49. *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for Class members; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

50. Without a class action, Defendant will likely retain the benefits of its wrongdoing.

**FIRST CAUSE OF ACTION**
**Violation of California's Consumer Legal Remedies Act ("CLRA"),**
**California Civil Code § 1750, *et seq.***

51. Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

52. Plaintiff brings this cause of action individually and on behalf of members of the proposed Class against Defendant.

53. The Product is a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Product by Plaintiff McGee and Class members constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

54. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Product with its current packaging, Defendant has represented and continues to represent that the Product is formulated with rosewater. Because the Product is not formulated with rosewater but instead contains *Rosa canina* bud extract, Defendant has violated section 1770(a)(5) of the CLRA.

55. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Product with its current packaging, Defendant has represented and continues to represent that the Product contains rosewater, when it does not . Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

56. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By packaging and marketing the Product as containing rosewater and then intentionally not selling the Product as such, Defendant has violated section 1770(a)(9) of the CLRA.

57. At all relevant times, Defendant has known or reasonably should have known that the Product does not contain rosewater and is instead formulated with *Rosa canina* bud extract, and that Plaintiff McGee and other members of the Class would reasonably and justifiably rely on the Rosewater Representation in purchasing the Product.

58. Plaintiff McGee and members of the Class have reasonably and justifiably relied on Defendant's misleading and fraudulent conduct when purchasing the Product. Moreover, based on the materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as

a material reason for the decision to purchase the Product may be presumed or inferred for Plaintiff McGee and members of the Class.

59. Plaintiff McGee and members of the Class have suffered and continue to suffer injuries caused by Defendant because they would not have purchased the Product or would have paid significantly less for the Product had they known that Defendant's conduct was misleading and fraudulent – *i.e.*, that the Product does not contain rosewater and is instead formulated with *Rosa canina* bud extract.

60. Under Cal. Civ. Code § 1780(a), Plaintiff McGee and members of the Class are seeking injunctive relief pursuant to the CLRA, preventing Defendant from continuing to engage in the wrongful acts and unfair and unlawful business practices described herein, as well as restitution, disgorgement of profits, and any other relief this Court deems proper.

61. Pursuant to California Civil section 1782, Plaintiff notified Defendant in writing by certified mail of the particular violations of California Civil Code section 1770 and demanded that Defendant rectify the problems associated with the actions detailed above and to give notice to all affected consumers of Defendant's intent to so act. A copy of the letter is attached hereto as Exhibit A.

62. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and to give notice to all affected consumers within 30 days of the date of written notice pursuant to California Civil section 1782, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

63. Pursuant to California Civil Code section 1780(d), attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## SECOND CAUSE OF ACTION

**Violation of California's Unfair Competition Law ("UCL"),**
**California Business and Professions Code § 17200, *et seq.***

64. Plaintiff McGee repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

65. Plaintiff brings this cause of action individually and on behalf of members of the proposed Class against Defendant.

66. California Business & Professions Code § 17200 (the "UCL") provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

67. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

68. Defendant's misleading advertising of the Product was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money directly and/or indirectly from Plaintiff McGee and members of the Class in the form of money that Plaintiff McGee and other members of the Class would not have paid but for Defendant's deceptive representations that the Product is formulated with rosewater.

69. Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

70. Defendant's conduct was and continues to be of no benefit to purchasers of the Product, as it is misleading, unfair, unlawful, and injurious to consumers who rely on the Product's packaging in making purchasing decisions. Substituting rosewater, a desirable skincare ingredient, with *Rosa canina* bud extract while marketing the Product as containing rosewater confers no benefit on consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money directly and/or indirectly from Plaintiff McGee and members of the Class in the form of money that Plaintiff McGee and other members of the Class would not have paid but for Defendant's deceptive representations that the Product contains rosewater, which it does not.

71. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

72. Defendant's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product is formulated with rosewater, when it instead contains *Rosa canina* bud extract. Because Defendant deceived Plaintiff McGee and members of the Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to wrongly obtain money directly and/or indirectly from Plaintiff McGee and members of the Class in the form of money that Plaintiff McGee and other members of the Class would not have paid but for Defendant's deceptive representations that the Product contains rosewater.

73. Plaintiff McGee requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to her and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or

violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff McGee and members of the Class may be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CAUSE OF ACTION**
**Violation of California's False Advertising Law ("California FAL"),**
**California Business and Professions Code § 17500, *et seq.***

74. Plaintiff McGee repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

75. Plaintiff brings this cause of action individually and on behalf of members of the proposed Class against Defendant.

76. California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

77. Defendant has represented and continues to represent to the public, including Plaintiff McGee and members of the Class, through deceptive packaging, that the Product contains rosewater, when it, in fact, is formulated instead with *Rosa canina* bud extract. Because Defendant has disseminated misleading information regarding the Product, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated California's FAL.

78. As a result of Defendant's false advertising, Defendant has and continues to fraudulently obtain money directly and/or indirectly from Plaintiff McGee and members of the

Class in the form of money that Plaintiff McGee and other members of the Class would not have paid but for Defendant's deceptive representations that the Product contains rosewater.

79. Plaintiff McGee requests that this Court cause Defendant to restore this fraudulently obtained money to her and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating California's FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff McGee and members of the Class may be irreparably harmed and/or defined an effective and complete remedy if such an order is not granted.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**

80. Plaintiff McGee repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

81. Plaintiff brings this claim individually and on behalf of members of the proposed Class against Defendant.

82. California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Cal. Com. Code § 2313.

83. Defendant has expressly warranted on the Product's packaging that the Product contains rosewater by way of the Rosewater Representation. However, as alleged herein, this express representation is patently false, as the Product does not contain rosewater and is instead formulated with *Rosa canina* bud extract.

84. These representations about the Product: (a) are affirmations of fact or promises made by Defendant to consumers that the Product contains rosewater; (b) became part of the basis

of the bargain to purchase the Product when Plaintiff McGee and other consumers relied on the representation; and (c) created an express warranty that the Product would conform to the affirmations of fact or promises. In the alternative, the representations about the Product are descriptions of goods which were made as part of the basis of the bargain to purchase the Product, and which created an express warranty that the Product would conform to the product description.

85. Plaintiff McGee and members of the proposed Class reasonably and justifiably relied on the foregoing express warranties, believing that the Product did in fact conform to those warranties.

86. Defendant has breached the express warranties made to Plaintiff and members of the Class by failing to formulate the Product with rosewater and instead utilizing *Rosa canina* bud extract.

87. Plaintiff and members of the Class paid a premium price for the Product but did not obtain the full value of the Product as represented. If Plaintiff and members of the Class had known the true nature of the Product, they would not have been willing to pay the premium price associated with the Product.

88. Within a reasonable amount of time after Plaintiff McGee discovered that Defendant did, in fact, breach the express warranty, Plaintiff notified Defendant of the breach.

## FIFTH CAUSE OF ACTION
**Fraud**

89. Plaintiff McGee repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

90. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

91. Defendant intentionally and knowingly represented that the Product contains rosewater. Specifically, the Rosewater Representation gave the impression that the Product contained rosewater.

92. The representations on the Product's packaging are false because the Product does not contain rosewater; rather, it is formulated with *Rosa canina* bud extract.

93. Defendant knew that the representations on the Product's packaging were false because (a) Defendant was in a superior position to know the true state of facts about its Product, including the ingredients used therein, and (b) Defendant knew that Plaintiff McGee and the Class could not reasonably have been expected to learn that the Product does not contain rosewater.

94. Defendant knew or should have known that the representations on the Product's packaging would justifiably induce Plaintiff McGee and the Class members to purchase the Product.

95. Plaintiff and members of the Class reasonably relied on the Rosewater Representation because Defendant knows that its customers trust the quality of its products and reasonably expect Defendant's products to contain the ingredients they are represented to contain. Defendant also knows that consumers actively seek out skincare products containing rosewater, which is a desirable skincare ingredient associated with multiple skin benefits, and are willing to pay for products that they believe contain it.

96. Plaintiff and members of the Class were harmed as a direct and proximate result of Defendant's conduct. Plaintiff and the Class members suffered actual damages, including by: (1) paying a price premium for a Product they reasonably believed contained rosewater; (2) purchasing a Product they would not have purchased, or would have paid significantly less for, had Defendant disclosed that the Product does not contain rosewater and was instead formulated with *Rosa canina*

bud extract; and/or (3) receiving a Product that was worth significantly less than represented because it does not contain rosewater.

97. Plaintiff's and Class members' reliance on Defendant's representations was a substantial factor in the harm and detriment caused to them. That harm and detriment resulted from the disparity between the Product's true quality, characteristics, and ingredients and the representations conveyed on the Product's packaging by Defendant, which misled and harmed consumers of the Product, such as Plaintiff and members of the Class.

98. Plaintiff and the Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Class, prays for the following relief:

A. Certification of the proposed Class; appointment of Plaintiff as representatives of the Class; and appointment of undersigned counsel as counsel for the Class;

B. A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

C. For an order finding in favor of Plaintiff and Class members on all counts asserted herein;

D. For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury, except as to the First Cause of Action;

E. For prejudgment interest on all amounts awarded;

F. For an order awarding Plaintiff and Class members their reasonable attorney fees, expenses, and costs of suit; and

G. For such relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

Dated: January 20, 2026

**FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*
Innessa M. Huot

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
ihuot@faruqilaw.com

**FARUQI & FARUQI, LLP**
Lisa T. Omoto (*pro hac vice* forthcoming)
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: (424) 256-2884
E-mail: lomoto@faruqilaw.com